CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 21 2014

JULIA C. DUDLEY, CLERK
BY: /s/ ZIMOUCH
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| DANIEL SEXTON, ) | |
| ) | Civil Action No. 2:14-CV-00034 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| WELLMONT HEALTH SYSTEM, et al., ) | |
| ) | By: Hon. Glen E. Conrad |
| Defendants. ) | Chief United States District Judge |

This matter arises from personal injuries that Plaintiff Daniel Sexton suffered in a motorcycle accident, which Sexton alleges were exacerbated by Defendants' failure to transport him between hospitals in a timely manner. The case is presently before the court on a motion to strike Sexton's amended complaint filed by Defendant Wellmont Health System ("Wellmont"). For the following reasons, that motion will be denied.

## Factual and Procedural Background

Sexton filed his original complaint in the Circuit Court for Lee County, Virginia, alleging one count of negligence against two defendants: Wellmont, a Tennessee corporation providing medical air transportation support services, and Med-Flight II, a "partnership or joint venture between Wellmont…and the Virginia State Police ('VSP')." See Compl. ¶ 2, Notice of Removal Ex. 3, Docket No. 1-3. In that complaint, Sexton alleges that he was severely injured in a motorcycle accident on October 3, 2012. Id. at ¶ 7. Following the accident, Sexton was transported to Lee Regional Medical Center ("LRMC"). Id. at ¶ 9. Sexton's treating physician determined that LRMC did not have the resources necessary to treat his injuries, and therefore authorized air transfer of Sexton to Holston Valley Medical Center in Kingsport, Tennessee. Id. at ¶ 11. Sexton alleges, however, that the helicopter designated to transport him, operated by Wellmont and the VSP, left LRMC without him on board. Id. at ¶ 15. As a result, Sexton had to

wait for another helicopter to be dispatched. This delay caused Sexton to suffer "substantial damages, including both temporary and permanent severe injuries, including brain damage, permanent and temporary disability, loss of income and medical expenses." Compl. ¶¶ 16, 18. Sexton seeks $1,000,000 in compensatory damages.

Wellmont removed the case to this court on September 2, 2014 based the diversity of the parties. Wellmont contends that total diversity exists here, because Wellmont is a Tennessee corporation and Sexton is a Virginia citizen.[1] Wellmont filed its Answer in this court on September 9, 2014, Docket No. 7. Sexton then filed an amended complaint on September 22, 2014.[2] In that amendment, Sexton names Mike Bowen, the pilot who flew the helicopter on the evening in question, as an additional defendant. See Am. Compl., Docket No. 9. The addition of Bowen, a Virginia citizen, would destroy diversity and divest the court of jurisdiction under 28 U.S.C. § 1332. Wellmont has therefore moved to strike the amended complaint, Docket No. 10. The court held a hearing on this motion on November 20, 2014, and the motion is now ripe for review.

## Discussion

In its motion to strike, Wellmont argues that the court should strike Sexton's amended complaint, because that amendment is futile and serves only to destroy diversity jurisdiction. The court is constrained to disagree.

---

[1] Wellmont asserts that Med-Flight II, the other defendant named in Sexton's original complaint, is the name of a helicopter owned by the Virginia State Police, and is therefore not a legal entity amenable to suit. See Mot. to Strike at 2, Docket No. 11. The court does not reach this issue, as it is irrelevant to disposition of the pending motion.

[2] Under Rule 15 of the Federal Rules of Civil Procedure, Sexton was permitted to do so "as a matter of course." See Fed. R. Civ. P. 15(a)(1)(B) (stating that a party may file an amended pleading once without leave of court within "21 days after service of a responsive pleading").

2

After a case is removed to federal court, the addition of a non-diverse party is governed by 28 U.S.C. § 1447(e), which provides that

> [i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

Section 1447(e) gives the court discretion to deny joinder of a party that would defeat jurisdiction, even when that addition is made by an amendment allowed "as a matter of course" under Rule 15. See Mayes v. Rapoport, 198 F.3d 457, 462 n.11 (4th Cir. 1999).

In exercising this discretion, the court is "entitled to consider all relevant factors," including (1) whether the amendment is designed solely to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in seeking amendment; (3) whether the plaintiff will be injured if the amendment is not allowed; and (4) any other equitable factors. Id. "[W]here…a plaintiff seeks to add a nondiverse defendant immediately after removal but before any additional discovery has taken place, district courts should be wary that the amendment sought is for the specific purpose of avoiding federal jurisdiction." Id. at 463. Courts should be cautious in allowing such an amendment, because "[i]f a case is remanded, the defendant ordinarily forever loses his right to a federal forum without any possibility of a review of the court's remand decision." Linnin v. Michielsens, 372 F. Supp.2d 811, 817 (E.D. Va. 2005).

The fraudulent joinder doctrine, which permits courts to assume jurisdiction over a case despite the presence of a nondiverse defendant, may be employed as part of a court's "'flexible, broad discretionary approach' to resolving a post removal question of whether a nondiverse defendant should be joined under Section 1447(e)." Mayes, 198 F.3d at 463. Under that analysis, a defendant must demonstrate that that there is "no possibility" that the plaintiff can establish a cause of action against the non-diverse defendant, or that there has been "outright fraud in the

3

plaintiff's pleading of jurisdictional facts." Id. at 464 (citing Marshall v. Manville Sales Corp., 6 F.2d 229, 232 (4th Cir. 1993)). "The burden on the defendant claiming fraudulent joinder is heavy: the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor." Id. This standard is "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under [Rule 12(b)(6)]." Harley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999).

In this case, Wellmont does not argue that "outright fraud" exists; instead, it claims that Sexton has "no possibility" of recovery against Defendant Bowen. The "no possibility" standard for fraudulent joinder "cannot be taken literally…what is meant is that there is 'no reasonable basis' for predicting liability on the claims alleged." Cordill v. Purdue Pharma, L.P., No. 1:02-CV-00121, 2002 WL 31474466, at *2 n.5 (W.D. Va. Nov. 5, 2002); see Linnin, 372 F. Supp.2d at 818. Wellmont advances two arguments supporting its contention that there is "no reasonable basis" for Sexton's claim against Bowen: sovereign immunity and the public duty doctrine. The court will consider each argument in turn.

Wellmont first contends that the doctrine of sovereign immunity shields Bowen from liability. Bowen is employed by the VSP, a state agency that enjoys sovereign immunity. See Ferrer v. Garasimowicz, 1:13-CV-00797, 2013 WL 5428110, at *2 (E.D. Va. Sept. 27, 2013), aff'd sub nom 13-2336, 2014 WL 1664485 (4th Cir. 2014). Under Virginia law, which applies in this diversity case, determining whether the VSP's sovereign immunity extends to Bowen would require a court to weigh four factors: (1) the nature of the function performed by the employee; (2) the extent of the state's interest and involvement in that function; (3) the degree of control and direction exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion. See Shaffer v. City of Hampton, Va., 780 F. Supp.

4

342, 344 (E.D. Va. 1991) (applying Virginia law). Wellmont contends that under these factors, Bowen is entitled to qualified immunity as a matter of law. See Mot. to Strike at 3-4. The court is constrained to disagree.

"[N]o single all-inclusive rule can be enunciated or applied in determining entitlement to sovereign immunity" in Virginia. James v. Jane, 282 S.E.2d 864, 869 (Va. 1980). Instead, "each case must be evaluated on its own facts." Colby v. Boyden, 400 S.E.2d 184, 187 (Va. 1991). In the amended complaint, Sexton alleges that Bowen's actions "violated the applicable procedures governing [his duties]." Am. Compl. ¶ 21. If true, this would preclude application of sovereign immunity altogether. See Tomlin v. McKenzie, 468 S.E.2d 882, 885 (Va. 1996) ("Conduct outside the scope of…employment is not protected by sovereign immunity."). Furthermore, even if a court determined that Bowen was entitled to sovereign immunity, he would remain liable for acts of gross negligence, which Sexton has alleged in his amended complaint. See Colby, 400 S.E.2d at 186 ("In Virginia, a government agent entitled to the protection of sovereign immunity is not immunized from suit. Rather, the degree of negligence which must be shown to impose liability is elevated from simple to gross negligence."). Taking Sexton's allegations as true, therefore, the court cannot conclude with absolute certainty that sovereign immunity would protect Bowen from liability in this case.

Wellmont also contends that the public duty doctrine shields Bowen from liability. The public duty doctrine distinguishes between the "public duty owed by [a public] official to the citizenry at large" and "a special duty owed to a specific identifiable person or class of persons." Marshall v. Winston, 389 S.E.2d 902, 905 (Va. 1990). "Only a violation of the latter duty will give rise to civil liability of the official." Id. Wellmont argues that Bowen, a state trooper acting

5

within the scope of his employment as a medical pilot, owed a duty to the citizens of Virginia at large, rather than a special duty to Sexton specifically.

As an initial matter, the court notes that the Supreme Court of Virginia "has only applied the public duty doctrine in cases when a public official owed a duty to control the behavior of a third party, and the third party committed acts of assaultive behavior upon another." Commonwealth v. Burns, 639 S.E.2d 276, 278 (Va. 2007). The Burns Court reasoned that expansion of the public duty doctrine was "unnecessary" when "Virginia's sovereign immunity doctrine provides sufficient protection to [state] employees in the discharge of their public duties." Id. Sexton's complaint, which does not allege acts of third-party assault, thus appears to fall outside the scope of Virginia's public duty doctrine entirely.

Moreover, Sexton has alleged facts suggesting that Bowen owed him a special duty, because Bowen "reasonably could have foreseen that he would be expected to take affirmative action to protect [Sexton] from harm." Burdette v. Marks, 421 S.E.2d 419, 421 (Va. 1992) (holding that an on-duty deputy sheriff who failed to intervene to stop an assault against the plaintiff was not protected by the public duty doctrine, because the assault occurred in the deputy's presence, who "knew or should have known that [the plaintiff] was in great danger of serious bodily injury or death"); see also Chiles v. Dunn, No. CL-2009-7555, 2010 WL 5676355 (Va. Cir. Ct. Dec. 29, 2010) (finding that the public duty doctrine would not bar plaintiff's wrongful death claim when complaint alleged that the defendant firefighters knew of victim's location and could have reasonably rescued her, thereby alleging a special duty owed to the victim). The amended complaint contains factual allegations suggesting that Bowen could have "reasonably…foreseen" that he needed to take action to protect Sexton from harm. Burdette, 421

6

S.E.2d at 421. Thus, even if the public duty doctrine is applicable here, the court cannot conclude that it would necessarily protect Bowen from liability.

When resolving all legal and factual questions in Sexton's favor, the court cannot "predict with absolute certainty" that the Lee County Circuit Court would "summarily dismiss" Sexton's claim against Bowen. B., Inc. v. Miller Brewing Co., 663 F.2d 545, 554 (5th Cir. 1981). The court also finds that Sexton's amendment was neither dilatory nor made for the sole purpose of defeating federal jurisdiction. Striking the amended complaint would force Sexton to file a separate lawsuit against Bowen in state court while continuing to litigate this case in a federal forum, resulting in costly parallel litigation. The court thus finds that the equities weigh in favor of accepting Sexton's amended complaint. Upon permitting the post-removal joinder of a non-diverse defendant, the court will remand the action for lack of subject matter jurisdiction.

## Conclusion

For the reasons stated, Wellmont's motion to strike the amended complaint is denied. The court accepts the amended complaint naming Mike Bowen as an additional defendant, and will therefore remand this matter to the Circuit Court for Lee County, Virginia for all further proceedings. The Clerk is directed to strike this case from the active docket of this court, and to send certified copies of this memorandum opinion and the accompanying order to all counsel of record and to the Clerk of the Lee County Circuit Court.

ENTER: This 21st day of November, 2014.

*/s/ Glen Conrad*
Chief United States District Judge